unaware of the Plaintiff's approved Intermittent Family Medical Leave status, surprising Plaintiff since she had shown Ms. Wascoat the approval letter as soon as she had received it.

109.   The Defendant, Ms. Wascoat, informed the Plaintiff that even if the Plaintiff had shown the approval letter to her, it was not official because she, herself, had not received a copy of the approval documentation directly from the Human Resources Department.

110.   The Plaintiff informed the Defendant, Ms. Wascoat, that she was to the point of considering filing a complaint with the Department of Labor due to the Defendant, Brooktrout's and its personnels' treatment of her and the fact that she believed that the Defendants' actions, conduct and treatment of her had violated her rights under the federal and state Family and Medical Leave Act and other laws. The Plaintiff also informed the Defendant, Ms. Wascoat, that she could no longer cope with the conflicting verbal and written communications and their constant changes in procedures.

111.   The Defendant, Ms. Wascoat, related the Plaintiff's intent to file a complaint to Ms. Michaud and Ms. Splitz and shortly thereafter, Ms. Splitz called the Plaintiff into her office and asked the Plaintiff not to contact the Department of Labor as "the FMLA law was a nightmare for employers."

112.   It is the Plaintiff's understanding that Ms. Splitz contacted the Defendant, Ms. Ryan, who was then working at the Brooktrout facility located in Salem, New Hampshire, about the situation and asked the Plaintiff to meet with her again at 4:00 p.m.

113.   The Plaintiff went to Ms. Splitz's office at the scheduled time, but when she arrived she learned that the Defendant, Ms. Ryan, would be meeting with her instead of Ms. Splitz. The Defendant, Ms. Ryan, unsuccessfully tried to convince the Plaintiff not to contact the Department of Labor.

114.   The Plaintiff, unconvinced that Brooktrout's treatment of her would improve, filed a complaint with the Department of Labor on November 11, 2001. Copy of that complaint is annexed herewith and incorporated by reference and marked Exhibit "P".

115.   The third Performance Review that was scheduled for October 12, 2001 did not occur until November 12, 2001.

116.   On November 12, 2001 the Defendants, Ms. Wascoat and Ms. Ryan, met with

-15-

the Plaintiff to review their conception of her FMLA status, and the procedures that she must follow for each medical appointment and to go over her performance review. No documentation was provided to the Plaintiff at the time of the review. The Defendant, Ms. Wascoat, had documents which she had prepared for the review, but she refused to provide the Plaintiff with a copy of them.

117.    Once again the main topic of the review was the Plaintiff's FMLA status and her attendance issues. The Defendant, Ms. Wascoat, again informed the Plaintiff that she was required to work a 40-hour workweek and that she was to make up any time she used for Intermittent Family Medical Leave.

118.    The Plaintiff objected to the Defendant's, Ms. Wascoat, statement and informed her that her demands violated her right under the Family and Medical Leave Act and other laws. She also informed the Defendants, Ms. Wascoat and Ms. Ryan, that under the Family and Medical Leave Act she was not required to provide a doctor's note for every appointment, although she would attempt to do so.

119.    The Defendant, Ms. Ryan, at that time, stated that she agreed with the Plaintiff, that she should not be required to make up any time under Intermittent Family Medical Leave and that she would not be required to provide a doctor's note every time that she took such time away from work. The Defendant, Ms. Ryan, also asked Ms. Wascoat to review her documents (copies of which she would not give to the Plaintiff) and provide the Plaintiff with a copy of a revised documents as soon as practical.

120.    During this November 12, 2001 Performance Review the Defendant, Ms. Wascoat, also informed the Plaintiff that she would now be required to provide doctor's notes for her personal medical appointments and/or illness within 48 hours from the time she missed work although the Defendant, Brooktrout's, company policy stated differently for all other employees. A copy of the policy is annexed herewith and incorporated by reference and marked Exhibit "Q".

121.    The Defendant, Ms. Wascoat, scheduled a further meeting for November 28, 2001 with the Plaintiff to further discuss FMLA procedures, and to provide her with a final draft of her new job description and/or to provide her with a copy of the documents that Ms. Ryan had asked her to revise on November 12, 2001.

122.    The November 28, 2001 meeting was scheduled for 10:00 a.m., but was postponed by the Defendant, Ms. Wascoat, until 1:00 p.m. At the meeting the Defendant, Ms. Wascoat, provided the Plaintiff with a memo of her notes from the previous Performance Review dated November 12, 2001.

123.   The Defendant stated that although she was satisfied with the Plaintiff's work performance her attendance still remained a serious problem, despite her FMLA status.

124.   When the Defendant, Ms. Wascoat, referred to three specific attendance dates, October 4, 2001, October 10, 2001, and November 8, 2001, the Plaintiff, reminded her that the hours she had on those dates related to her daughter's, Ivonne-Marie Mendoza, medical appointments and were covered under her Intermittent Leave status.

125.   The Defendant, Ms. Wascoat, stated that regardless of the Plaintiff's claim that her absences were considered unexcused by Brooktrout.  The Defendant also reprimanded the Plaintiff for not having made the appointments for after 3:00 p.m. The Plaintiff again reminded the Defendant that she had no control over scheduling of appointments and that she had tried to schedule the appointments for after 3:00 p.m., but the physician was unavailable.

126.   When the Defendant, Ms. Wascoat, also claimed that the Plaintiff had not provided her with two weeks advanced notice for these appointments the Plaintiff asked for permission to go to her work area and returned with a copy of the appointment confirmation that contained the appointments dates in question. The appointment confirmation had been emailed and hand delivered to Ms. Wascoat on July 26, 2001, August 16, 2001 and September 28, 2001. She also returned with a pamphlet that the Plaintiff had received from the Department of Labor that included the FMLA guidelines.  The Defendant, Ms. Wascoat, refused to review the appointment confirmation or the guidelines.

127.   The Plaintiff once again informed the Defendant, Ms. Wascoat,  that she was violating her rights under the Family Medical Leave Act and other laws.

128.   The Plaintiff also requested a reinstatement of her previous employment terms and benefits and the deletion of the unjustified warnings from her personnel file, but the Defendant, Ms. Wascoat, informed the Plaintiff that this would not be possible and she refused to do so.

129.   The Plaintiff offered to make a copy of the FMLA pamphlet for her but Ms. Wascoat refused the offer.  The Plaintiff once again reiterated that the Defendant was violating her rights under the Family and Medical Leave Act and began to read several paragraphs from the pamphlet to Ms. Wascoat.

130.   The Defendant, Ms. Wascoat, became very agitated and upset with the Plaintiff and stated that she did not know anything about the Family and Medical Leave Act and

-17-

did not want to know anything, either.

131.    When the Plaintiff told the Defendant that she should be ashamed the Defendant, Ms. Wascoat, replied that she was just representing the Defendant, Brooktrout, and that she was only doing what she was being told to do by the Defendant, Ms. Ryan.

132.    The Plaintiff, emotionally shaken by Ms. Wascoat's attitude and demeanor toward her, walked out of the meeting realizing that regardless of what she did, she would never be able to properly obtain the Intermittent Family Medical Leave status from Brooktrout so as to have her legitimate absences excused and protected by the law.

133.    The Plaintiff, emotionally drained by the acts and conduct of the Defendants, then proceeded to write her resignation letter.

134.    The Plaintiff noted in her letter that she believed that the Defendants had violated her rights under the Family and Medical Leave Act leaving her feeling humiliated and emotionally drained from her dealings with Brooktrout and its personnel as described herein, gave the Defendant, Brooktrout, three weeks notice and emailed her letter of resignation to the Defendants, Ms. Ryan, Ms. Wascoat, and to Brooktrout's in-house Corporate Counsel.  A copy of the letter is annexed herewith and incorporated by reference and marked Exhibit "R".

135.    Later that day, on or about 1:30 p.m. of November 28, 2001, the Plaintiff saw the Defendants, Ms. Wascoat and Ms. Michaud laughing and high-fiving each other and later learned that the laughing and glee was as a result of her notice/resignation.

136.    Neither Ms. Michaud, Ms. Ryan, Ms. Wascoat nor Brooktrout's in-house Corporate Counsel contacted the Plaintiff to ask her what had transpired during the earlier meeting with Ms. Wascoat and/or matters leading up to her letter of resignation.

137.    On or about 4:45 p.m. of November 28, 2001, the Plaintiff went to go to the Defendant, Ms. Ryan's, office to explain to her what had transpired with the Defendant, Ms. Wascoat, in their earlier meeting, but Ms. Ryan had no interest, whatever.

138.    The Defendant, Ms. Ryan, informed the Plaintiff that she had spoken to Ms. Wascoat and Ms. Michaud, and that they all had decided that it was not necessary for the Plaintiff to stay any additional time and Ms. Ryan informed the Plaintiff that it would be her last day at work.

139.    The Defendant, Ms. Ryan, took out an already prepared folder that included the Plaintiff's payroll check for the week, a second check for three weeks (3) severance pay and Cobra and Massachusetts Department of Employment and Training (DET) paperwork.    A copy of the payroll check, severance check, Cobra and DET paperwork are annexed herewith and incorporated by reference and marked Exhibit "S".

140.    The Plaintiff told the Defendant, Ms. Ryan, that if Brooktrout did not want her to return to work the next day she would like this to be in writing.

141.    The Defendant, Ms. Ryan, replied that she could do so and would mail it to the Plaintiff at her home address, but the Plaintiff informed the Defendant, Ms. Ryan, that she was reluctant to leave the premises without such a letter and that she would wait for the Defendant, Ms. Ryan, to provide her with one. The Defendant, Ms. Ryan, then drafted and hand delivered a letter to the Plaintiff. A copy of such letter is annexed herewith and incorporated by reference and marked Exhibit "T"

142.    Thereafter, on or about December 6, 2001, the Plaintiff contacted the Massachusetts Department of Employment and Training and filed a claim for unemployment benefits.

143.    A DET representative interviewed her and the Plaintiff's unemployment benefits were approved, but were later contested by the Defendant, Brooktrout Technology.

144.    After a contested hearing the Plaintiff's DET benefits were approved, but due to the Defendant, Brooktrout's, contesting her claim the Plaintiff had to incur legal expenses. A copy of the DET decision is annexed herewith and incorporated by reference and marked Exhibit "U"

145.    On or about December 19, 2001 and again May, 31 2002, the Plaintiff contacted the Defendant, Ms. Ryan, and inquired about reinstatement of her employment. When the Plaintiff learned that Brooktrout had made a change in the management of the Sales Department and that her position of International Sales Coordinator, which she previously held, was once again readily available. The Defendant, Ms. Ryan, confirmed in writing that the Plaintiff would not be reinstated or rehired. A copy of the correspondence is annexed herewith and incorporated by reference and marked Exhibit "V".

146.    On or about September 27, 2003, a letter outlining the Defendants' violations under the Family and Medical Leave Act and the damages sustained by the Plaintiff

-19-

was mailed to the Defendants. A copy of said letter is annexed herewith and incorporated by reference and marked Exhibit "W".

147.    The Defendants have also violated M.G.L., Chapter 149 § 52D, as said forth herein.

148.    On or about November 5, 2003, the Attorney General of Massachusetts issued the Plaintiff with authorization for and immediate private suit against the Defendants. A copy of the authorization is annexed herewith and incorporated by reference and marked Exhibit "X".

149.    The Plaintiff, realleges all allegations contained within Count II, Count III Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count X and Count XI of this Complaint and incorporates same herein by reference.

## COUNT II - As to Defendants' Failures to Comply with Leave Requirements (29 U.S.C. § 2612)

150.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained within Count I, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count X, and Count XI of this Complaint and incorporate same herein by reference.

151.    Under 29 U.S.C. § 2612 the Plaintiff is entitled to a total of 12 workweeks of leave during any 12-month period in order to care for daughter and pursuant to 29 U.S.C. § 2612 (b) and (c) the Plaintiff is also entitled to unpaid leave and/or intermittent or reduced leave schedule.

152.    The Plaintiff, Ivys J. Maldonado's, efforts to obtain the leave time to which she was entitled was repeatedly denied and/or scrutinized and/or delayed by the Defendants in violation of said section and other laws, statutes and regulations.

## COUNT III- As to Defendants' Failure to Comply with Certification (29 U.S.C § 2613)

153.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained within Count I, Count II, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, Count X and Count XI of this Complaint and incorporate same herein by reference.

154.    Under 29 U.S.C. § 2613 (a) an employer may require for leave under subparagraph (C) or (D) of section [29 U.S.C. § 2612 (a)] be supported by a certification issued by the health care provider of the daughter as appropriate.

155.   Under §2613 (b) certification shall be sufficient if it states the date on which the serious condition commenced; the probable duration of the condition; and the appropriate medical facts within the knowledge of the health care provider.

156.   For the purposes of [29 U.S.C. §2612 (a) (1) (C)], a statement that the employee needs to care for her daughter and an estimate of the amount of time that such employee  needs to care for the daughter, will suffice. Certification for Intermittent Leave and/or Reduce Leave Schedule for planned medical treatment, the dates on which the treatment is expected to be given and the duration of such treatment and a statement stating that the Intermittent Leave is necessary for the care of the daughter who has a serious health condition and the expected duration and schedule of the Intermittent Leave, will suffice.

157.   Also, under 29 U.S.C. § 2613 (e) the employer may require that the eligible employee obtain subsequent recertification on a reasonable basis.

158.   The Plaintiff, Ivys J. Maldonado, alleges that the Defendants abused and violated her rights under this section and other sections, laws, statues and regulations by denying Intermittent Family and Medical Leave approval and repeatedly asking for and demanding unwarranted and unnecessary certification and recertification on unreasonable bases, using such conduct and actions as part of the Defendants' continued harassment and attempts to intimidate the Plaintiff into complying with their demands.

## COUNT IV- As to Defendants' Failure to Comply with Employment and Benefits Protection (29 U.S.C. § 2614 (a) (2))

159.   The Plaintiff, Ivys J. Maldonado, realleges the allegations contained within Count I, Count II, Count III, Count V, Count VI, Count VII, Count VIII, Count IX, Count X, and Count XI of this Complaint and incorporates same herein by reference.

160.   The Plaintiff alleges that the Defendants have violated Title 29 U.S.C. § 2614 (a) (2) of the Family and Medical Leave Act which provides that the taking of leave under section 102 [29 U.S.C. § 2612] shall not result in the loss of any employment benefit accrued prior to the date on which leave commenced.

161.   The Plaintiff alleges herein that the Defendants violated her rights to Intermittent Leave, under this section and other sections, laws, statutes and regulations by adversely changing the benefits to which she was entitled to once her FMLA Leave began.

-21-

## COUNT V - As to Defendants' Failure to Comply with (29 C.F.R. § 825.204 (d))

162.    The Plaintiff, Ivys J. Maldonado, rellages the allegations contained with in Count I, Count II, Count III, Count IV, Count VII, Count VIII, Count IX, Count X and Count XI of this complaint and incorporate same herein by reference.

163.    The Defendants have violated 29 C.F.R. 825.204 (d) which provides that an employer may not transfer the employee to an alternative position in order to discourage the employee from taking leave or otherwise work a hardship on the employee.

164.    The Plaintiff alleges that the Defendants' altered her position, work schedule, and benefits in order to discourage the her from taking said Intermittent Leave, violating not only this section but other sections, law, statutes and regulations as well.

## COUNT VI- As to Defendants Failure to Comply with (29 C.F.R. § 825.220 (c))

165.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained within Count I, Count II, Count III, Count IV, Count V, Count VII, Count VIII, Count IX, Count X and Count XI of this complaint and incorporate same herein by reference.

166.    The Defendants violated 29 C.F.R. § 825.220 (c) which provides that an employer is prohibited from discriminating against an employee who has used FMLA leave and employers also cannot use the taking of FMLA leave as a negative factor in employment actions, such as disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

167.    The Plaintiff alleges that the Defendants violated 29 C.F.R. § 825.220 (c) and other sections, laws, statutes and regulations by constantly disciplining her, by providing negative performance violations which specially cited FMLA attendance as a basis for the disciplines, reprimanding her for the time that she would take for sais Intermittent Leave and counting these instances as unexcused absences and imposing conflicting and changing policies and/or procedures in order to harass, intimidate, and to hold her up to ridicule and humiliation within the company, and to further and otherwise discriminate against her.

## COUNT VII- As to  Defendants Failure to Comply with Notice (29 U.S.C. § 2619 (a) and 29 C.F.R. § 825.300 (a))

-22-

168.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained with in Count I, Count II, Count III, Count IV, Count V, Count VI, Count VIII, Count IX, Count X and Count XI of this complaint and incorporates same herein by reference.

169.    The Defendants violated 29 U.S.C. § 2619 which provides that an employer shall post and keep posted, in conspicuous places on the premises of the employer where notices to employees are customarily posted, a notice, setting forth excerpts from, or summaries of, the provision of title 29 U.S.C. § 2611 et seq. and information pertaining to the filing of a charge against an employer for violations of the Family and Medical Leave Act.

170.    The Plaintiff alleges that the Defendants have violated such section, and other sections, laws, statutes, and regulations, as well, as in that no such posting was thereby made on the Employer's premises.

## COUNT VIII- As to Defendants' Violations of Maximum Hours (29 U.S.C. § 207)

171.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained with in Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX and Count XI of this complaint and incorporates same herein by reference.

172.    The Defendants violated 29 U.S.C. § 207 (2) (C) which provides no employer shall employ any of their employees who in any workweek engage in commerce or in the production of goods for a workweek longer than forty (40) hours unless such employee receives compensation for his/her employment in excess of the hours above specified at a rate not less than one and one-half the regular rate at which he/she is employed.

173.    The Plaintiff alleges that the Defendants violated such section, other sections, laws, statutes and regulations by refusing to compensate her for the overtime hours that on several occasions the Defendant required her to work.

## COUNT IX - As to Defendants' Violations of Breaks and Meal Periods (29 C.F.R § 785.18 and § 785.19)

174.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained with in Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX and Count X of this complaint and incorporates same herein by reference.

175.    The Defendant have violated 29 C.F.R. § 785.18 which provides that rest periods of short duration, running from 5 minutes to about 20 minutes, are common in

-23-

industry and they promote the efficiency of the employee and are customarily paid for as work time, and they must be counted as hours worked.

176.    The Plaintiff alleges that the Defendants violated such section, and other sections, law, statutes, and regulations by using rest time to create and/or promote disparaging treatment of her by allowing other employees to partake in small breaks throughout the day and denying the Plaintiff from participating in the rest periods.

177.    The Defendants further violated 29 C.F.R. § 785.19 (a) which provides that bona fide meal periods are not work time.  The employee must be completely relieved from duty for the purposes of eating regular meals.  The employee is not relieved if he/she is required to perform any duties, whether active or inactive, while eating.

178.    The Defendants further violated 29 C.F.R. § 785.19 by requiring that the Plaintiff attend quarterly meetings in which lunch was provided and not allowing her to be relived from her work duties while eating.

**COUNT X- As to Defendants' Failure to Comply The Civil Rights Act of 1964 (42 U.S.C. § 2000e et. seq.)**

179.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained with in Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII Count IX and XI of this complaint and incorporates same herein by reference.

180.    The Defendants have violated 42 U.S.C. § 2000e (k) which provides it is unlawful for an employer to discriminate against an employee on the basis of sex, which include, but are not limited to, childbirth and other related medical conditions.

181.    The Defendants also violated 42 U.S.C. § 2000e-2 which provides that it shall be unlawful to discharge any individual or to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employments because of such individual's sex or national origin.

182.    The Plaintiff alleges herein that the Defendants violated such section, other sections, laws, statutes and regulations by interfering and/or attempting to deter her from fulfilling her cultural values and/or responsibilities to her child as a mother and/or primary care giver by creating and/or promoting disparaging treatment of her in order to discriminate, harass, humiliate and intimidate her from exercising her rights which ultimately constructively and permanently causing her to necessary  from her position as International Sales Coordinator.

-24-

183.    As result of the conduct and actions of the Defendants as complained of herein the Plaintiff's civil right under both Federal and Massachusetts Constitutions', laws, statutes and regulations have been violated.

## COUNT XI- As to Defendants' Violation of Prohibited Acts (29 U.S.C. § 2615)

184.    The Plaintiff, Ivys J. Maldonado, realleges the allegations contained within Count I, Count II, Count III, Count IV, Count VI, Count VII, Count VIII, Count IX, and Count X of this Complaint and incorporates same herein by reference.

185.    The Defendants violated Title 29 U.S.C. § 2615 (a) (1) and (2) which prohibit an employer from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under [29 U.S.C. § 2611 et. seq.] and makes it unlawful for an employer to discharge or in any matter discriminate against any individual for opposing any practice made unlawful by [29 U.S.C. § 2611 et. seq.].

186.    The Plaintiff alleges herein that the Defendants prohibited, interfered with, and denied the exercising of her rights under the Family and Medical Leave Act and other laws, statutes and regulations, and furthermore, the Defendants discriminated against her for opposing their unlawful practices.

187.    The Defendants further violated 29 U.S.C. § 2615 (b) (1) which provides that it is unlawful for any person to discriminate against any individual because such individual has filed a charge, or has instituted or caused to be instituted any proceeding, under or related to [29 U.S.C. § 2611 et seq.]

188.    The Plaintiff alleges that Brooktrout violated this provision and other laws, statutes and regulations by attempting to interfere with her right to file a compliant about the Defendants' violations of her right under the Family and Medical Leave Act with the Massachusetts Department of Labor and then subsequently discriminating against her and furtherly harassing her after she filed her complaint with the Massachusetts Department of Labor by subjecting the Plaintiff to a third negative Performance Review, unjust reprimands and adverse changes to her employment status with Brooktrout and further continuing their pattern of changing and conflicting policies and/or procedural demands, and as further alleged herein.

WHEREFORE, the Plaintiff demands Judgement for the following damages and relief against the Defendant:

(A)    Judgment against the Defendants;

-25-

(B)     Reinstatement

(C)     All lost money and benefits for all expenses incurred;

(D)     Compensatory damages;

(E)     Liquidated damages;

(F)     Punitive damages;

(G)     Attorney's fees;

(H)     Interest and costs;

(I)     Any and all other further relief that this Honorable Court deems meet and just.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES**

Respectfully Submitted,
By the Plaintiff's Attorneys

SCOTT A. LATHROP, ESQ. Co-Counsel
Scott A. Lathrop & Associates
122 Old Ayer Road
Groton, MA 01450
(978) 448-8234
BBO No. 287820

JAMES J. LONG, JR., ESQ. Co-Counsel
44 Pleasant Street
Woburn, MA 01801
(781) 935-5634
BBO No. 304040

-26-