FILED
CLERKS OFFICE

IN THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

2003 DEC 22 P 1:43

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| IVYS J. MALDONADO,<br>    PLAINTIFF<br><br>VS.<br><br>BROOKTROUT TECHNOLOGY INC.,<br>ERIC GILER, AS PRESIDENT OF<br>BROOKTROUT TECHNOLOGY AND<br>INDIVIDUALLY, AND<br>CHRISTINE RYAN, AS CORPORATE<br>HUMAN RESOURCES DIRECTOR OF<br>BROOKTROUT TECHNOLOGY, AND<br>INDIVIDUALLY, MICHELE MICHAUD,<br>AS SALES ADMINISTRATION<br>DIRECTOR OF BROOKTROUT<br>TECHNOLOGY INDIVIDUALLY, AND<br>VALERIE WASCOAT, AS SALES<br>ADMINISTRATION SUPERVISOR OF<br>BROOKTROUT TECHNOLOGY AND<br>INDIVIDUALLY<br>    DEFENDANTS. | DOCKET NO. 03 CV 12299 RCL |

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

### INTRODUCTION

1. This case concerns the decision of Brooktrout Technology, Inc. (Brooktrout) to deny the Plaintiff her rights under 29 U.S.C. § 2601 et.seq. to take reasonable leave for the purpose of caring for her chronically ill child. The case also concerns the harassment, discrimination, retaliation and loss of benefits, and including, but not limited to the violation of other statutes, laws, regulations that the Plaintiff endured during her employment at Brooktrout Technology, as alleged herein.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over this action under 29 U.S.C. §2601 et seq., (Family and Medical Leave Act), 29 C.F.R. § 825 et seq., The Fair Labors Standards

Act 29 C.F.R. § 785.18 and § 785.19, and 42 U.S.C. §2000e (Title VII of the Civil Rights Act of 1964), and other statutes, law and ordinances applicable.

3.  Venue is proper in this judicial district pursuant to 29 U.S.C § 2615 (a) and 42 U.S.C. § 2000e- subsection 703 because the cause of action arises in Massachusetts.

4.  There exists now between the parties hereto an actual, justiciable controversy in which Plaintiffs are entitled to have a declaration of their rights and of Defendant's obligations, and further relief because of the facts and circumstances hereinafter set out.

## THE PARTIES

5.  The Plaintiff, Ivys J. Maldonado, is an individual who now resides at 26 Stoddard Street, Woburn, Middlesex County, Massachusetts.

6.  The Defendants are Brooktrout Technology, Inc., Eric Giler, as President of Brooktrout and individually, Christine Ryan, as Corporate Human Resources Director of Brooktrout and individually, Michele Michaud, as Sales Administration Director of Brooktrout and individually, and Valerie Wascoat, as Sales Administration Supervisor of Brooktrout and individually whose business addresses are 250 First Avenue, Needham, MA 01701.

## ESSENTIAL FACTS

6.  The Plaintiff was an employee of the Defendant, Brooktrout, who after inquiring about obtaining Intermittent Leave was notified by the Defendant that she did qualify for the FMLA leave under 29 U.S.C. § 2612. A copy of the email stating such qualification for FMLA leave is annexed herewith and incorporated by reference and marked Exhibit "A".

7.  The Defendant, Brooktrout, was and is engaged in commerce or in any industry or activity affecting commerce who employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year working within seventy-five (75) miles of the Plaintiff's worksite.

8.  The Plaintiff commenced work for the Defendants as a salaried employee, but as a result of her applying for FMLA leave she was changed to an hourly paid employee with loss of benefits and other penalties and harassment as alleged herein and was constructively permanently separated on November 28, 2001 from her position of International Sales Coordinator with the Defendant, Brooktrout, all as

-2-

further alleged herein.

9. The Plaintiff is the primary care giver for her daughter, Ivonne-Marie Mendoza, who suffers from a chronic seizure disorder first diagnosed in 1989 and for which she has required continuous medical treatment since 1991. The Plaintiff's Daughter, Ivonne-Marie Mendoza, also suffers from Attention Deficit Hyperactivity Disorder (ADHD).

10. The Plaintiff, Ivys J. Maldonado, is responsible for bringing her daughter to any and all medical appointments and/or for any medical emergencies.

11. The Plaintiff's daughter's chronic medical conditions have caused instances when the Plaintiff needed to leave work to attend to her ailing daughter and/or to bring her to medical appointments and/or treatments.

12. The Plaintiff's attendance at work was affected by the medical needs of her chronically ill daughter for which purpose the Family and Medical Leave 29 U.S.C § 2601 and the Massachusetts Small Necessities Leave Act (SNLA) M.G.L. Chapter 149 § 52D were enacted.

### COUNT I - As to Defendant's Failure to Comply with Family and Medical Leave Act (FMLA) (29 U.S.C. § 2601 (b))

13. On or about February of 2001, the Plaintiff, Ivys J. Maldonado, initially contacted the Human Resources Department and inquired about the procedures and requirement to apply for Intermittent Family Medical Leave and also provided detailed information to the Defendant, Ms. Christine Ryan, about her daughter's chronic medical condition.

14. On or about February 15, 2001 and March 2, 2001, the Defendant, Ms. Ryan confirmed to the Plaintiff, Ivys J. Maldonado, via email that she qualified for Intermittent Family Medical Leave. A copy of the email is annexed herewith and incorporated by reference and marked Exhibit "A".

15. The Defendant also verbally informed the Plaintiff that Brooktrout Technology did not have an established policy or procedure regarding Intermittent Family Medical Leave and that one would be created as they went along. Ms. Ryan asked the Plaintiff to note any hours taken for Intermittent Family Medical Leave on a spreadsheet and to provide this information to both the Plaintiff's immediate supervisor, Valerie Wascoat, and Manager, Michele Michaud, on a monthly basis. However, Ms. Ryan did not provide the Plaintiff with any form for which to track her leave hours.

16.     On or about March 2001, the Defendants, Valerie Wascoat and Michele Michaud, requested that the Plaintiff complete a vacation request form for any leave hours taken and needed for her Intermittent Family Medical Leave.

17.     On or about April 2001, Ms. Wascoat and Ms. Michaud requested that the Plaintiff, in addition to the completion of the vacation request form for Intermittent Family Medical Leave hours, also submit a doctor's note for each medical appointment.

18.     On April 16, 2001, the Plaintiff's daughter, Ivonne-Marie Mendoza, suffered a seizure and the Plaintiff had to leave work to care for her daughter.

19.     The Defendant, Ms. Michaud, became upset with the Plaintiff for having to leave work and specifically instructed the Plaintiff, Ivys J. Maldonado, that prior to leaving she must first complete a vacation request form and note the words SNLA (Small Necessities Leave Act) on the form.

20.     The Plaintiff did as instructed and placed the form on the Defendant Ms. Wascoat's desk for her signature, making a copy of the form before submitting it to both Defendants, Ms. Wascoat and Ms. Michaud.

21.     After returning from her Leave the Plaintiff asked Ms. Wascoat for a copy of the form that she and Ms. Wascoat had signed and was surprised to learn that the form had been altered without her knowledge or consent. Ms. Wascoat had crossed out the SNLA (Small Necessity Leave) language and thereon deducted the 4.75 hours taken by the Plaintiff to attend to her ailing daughter from the Plaintiff's accrued vacation. A copy of the documents are annexed herewith and incorporated by reference and marked as Exhibit "B".

22.     On May 23, 2001, the Defendant, Ms. Wascoat, called the Plaintiff to her office and then demanded that she provide her with at least two weeks advance notice for any medical emergencies, sicknesses and medical appointments.

23.     The Plaintiff, Ivys J. Maldonado, explained and informed her that she might not always be able to comply with her request and she could not even provide her with any advance notice since her daughter's seizures occurred unexpectedly and/or if other emergencies arose.

24.     The Plaintiff then asked the Defendant, Ms. Wascoat, to accompany her to Ms. Ryan's office to see if she could assist in finding a solution to Ms. Wascoat's request, but the Defendant, Ms. Wascoat, refused to go to Ms. Ryan's office with the Plaintiff.

25. The Plaintiff telephoned and emailed the Defendant, Ms. Christine Ryan, and requested she meet with her that afternoon. The email is annexed herewith and incorporated by reference and marked Exhibit "C".

26. Upon the Plaintiff return to her work area, she found an unexpected email notice from the Defendant, Ms. Wascoat, stating therein that she would have an annual performance review at 3:00 p.m. that day.

27. The Plaintiff contacted Ms Ryan and informed her of the Performance Review communication sent by the Defendant, Ms. Wascoat.

28. On May 23, 2001 the Plaintiff, Ivys J. Maldonado, met with the Defendants, Ms. Wascoat and Ms. Michaud, at 3:00 p.m. to discuss her Annual Performance Review. The Plaintiff was then informed for the first time of her alleged performance problems.

29. The primary problem discussed continuously during the review was the Plaintiff's absenteeism due to time required to attend to her daughter's medical needs.

30. Ms. Wascoat and Ms. Michaud reiterated throughout said Performance Review that if the Plaintiff's absenteeism continued they would consider remedies against her up to termination. The Defendants also emphatically demanded that the Plaintiff make up any hours she used for Intermittent Family Medical Leave.

31. The review lasted more than three hours and twenty minutes (3:20) during which the Plaintiff, Ivys J. Maldonado, cried throughout most of the meeting, being unable to comprehend the reasoning for the treatment she was enduring.

32. During the Performance Review meeting the Plaintiff asked the Defendants to allow her to telephone her daughter to inform her she would be coming home late. The Defendants refused the Plaintiff's request.

33. During the performance review the Plaintiff was informed that she would not receive a salary increase.

34. The Plaintiff was also informed that her job description had been changed, but no job description document was provided.

35. The Plaintiff's work scheduled hours were also changed. The normal starting

hour for all Brooktrout employees was 8:30 a.m., but the Plaintiff, Ivys J. Maldonado's, starting time was changed to 8:00 a.m.

36.  The Plaintiff, Ivys J. Maldonado, was also changed from a salary employee to a hourly employee even though all of the other Sales Coordinators in her department remained salary employees.

37.  As a direct result of the Plaintiff's employment status change, many of the Plaintiff's benefits were substantially altered, including that she was now required to accrue sick time where salaried employees did not have to accrue such sick time.

38.  The Defendant, Ms. Michaud, also informed the Plaintiff that she would be receiving a new benefits package from Beth Mog, Benefits Manager, but no such package was ever delivered and/or received by the Plaintiff.

39.  At or about 6:20 p.m. Ms. Sharon Splitz, a Human Resources Representative, interrupted the Performance Review meeting and asked the Defendant, Ms. Michaud, to come out of the conference room and spoke with her. It is the Plaintiff's understanding that Ms. Splitz then requested that the two Defendants end the Performance Review meeting and also instructed the Defendant, Ms. Michaud, to speak to Ms. Ryan first thing the next morning.

40.  Upon Ms. Splitz and Ms. Michaud's return to the conference room, Ms. Splitz asked the Plaintiff if she needed someone to drive her home. The Defendant, Ms. Wascoat, left the room and returned with tissues and water for the Plaintiff who was still very emotionally distraught, crying and upset.

41.  As a result of the Plaintiff's alleged poor Annual Performance Review a second review was to be held on July 2001.

42.  As a direct result of the Plaintiff's alleged poor Annual Performance Review she was put on a performance plan where she would have to attend weekly meetings with her immediate supervisor, Ms. Wascoat.

43.  The Defendant, Ms. Wascoat, would reserve conference rooms for the purpose of the weekly follow-up meetings and would post an electronic meeting notice detailing the information about the Plaintiff's alleged poor performance issues for everyone to see. A copy of the notice is annexed herewith and incorporated by reference and marked Exhibit "D".

44.  On or about May 23, 2003 the Defendants, Ms. Wascoat and Ms. Michaud,

then instructed that the Plaintiff schedule all medical appointments for after 3:00 p.m. The Plaintiff informed the Defendants that she would try to comply with their request to the best of her ability, but made them aware the that the medical facility, Lahey Clinic, issued appointments according to her daughter's physicians' schedules. The Plaintiff also informed the Defendants that she had very limited control over the scheduling of times of medical appointments.

45.   The Defendant, Ms. Michaud, stated that this was now Brooktrout's new policy and insisted that the Plaintiff had to look for a way to comply with their request.

46.   On May 24, 2001 a second meeting was held between the Plaintiff, Ivys J. Maldonado, and the Defendants, Ms. Ryan, Ms. Wascoat, and Ms. Michaud, with Sharon Splitz, a Human Resources Representative, also present. The main topic of the meeting was the time that the Plaintiff was using to attend to her daughter's medical needs.

47.   The Plaintiff was informed that Ms. Splitz would create a form that the Plaintiff would have to provide to her daughter's physician who then had to complete the form at the time of the appointment and/or emergency. No form was ever created.

48.   On previous occasions the Plaintiff had provided copies of doctor's notes that had excused her daughter from school due to health matters to the Defendants, Ms. Wascoat and Ms. Michaud, but they informed the Plaintiff that these notices contained insufficient information even though they included the date, time, and the name of the doctors who had attended to her daughter. The Defendants insisted that more detail had to be provided as to why the Plaintiff had to miss work. A copy of the notices are attached herewith and incorporated by reference and marked Exhibit "E".

49.   On May 24, 2001 the Defendant, Ms. Michaud, informed the Plaintiff that she had the right to make a written statement regarding her Annual Performance review and that her reply would then be filed in her employee file, however, the Defendant made it a point to note that the Plaintiff had only until May 25, 2001 to submit her response since she, Ms. Michaud, would allow her only 48 hours from the first date of her review May 23, 2001, to submit such response.

50.   The Plaintiff submitted her response on May 25, 2001, with copies to the Defendants, Ms. Ryan, Ms. Michaud, Ms. Wascoat, and Mr. Giler, a copy of said response is attached herewith and incorporated by reference and marked Exhibit "F".

51.   On May 25, 2001 the Plaintiff requested a copy of her new job description. She was told by the Defendants, Ms. Ryan, Ms. Michaud, and Ms. Wascoat that it was

"being worked on". The Plaintiff continuously asked for a copy of her job description, but she only received a final draft of her job description on November 28, 2001, the date of her termination.

52.    On or about May 29, 2001 the Plaintiff took her scheduled vacation. Upon returning from her vacation the Defendant, Ms. Michaud, verbally reprimanded the Plaintiff for work that had not been completed while she was on vacation.

53.    On or about June 2001 the Defendant, Ms. Wascoat, informed the Plaintiff, Ivys J. Maldonado, that she would have to complete two time-sheets every week and submit them to her. One time-sheet noting 40 hours worked was for payroll submission and a second time-sheet to show her actual hours worked. Copies of the time-sheets are attached herewith and incorporated by reference and marked Exhibit "G".

54.    On or about June 2001 the Defendant, Ms. Wascoat, informed the Plaintiff that even though she was a hourly employee she was not allowed to take her the legally allowable two 15 minute breaks.

55.    The Plaintiff was on several occasions asked to work overtime, but was informed by the Defendants, Ms. Michaud and Ms. Wascoat, that Brooktrout would not compensated her for the overtime hours she worked and instead the Plaintiff would have to take extended lunches to use up her overtime hours.

56.    In June 2001 the Defendants, Ms. Wascoat and Ms. Michaud, once again insisted that the Plaintiff provide them with doctor's notes for each medical appointment and/or emergency; to complete vacation request forms; to work a 40-hour work week regardless of her Intermittent Family Medical Leave status; and to make up any time she used for FMLA leave purposes.

57.    The Plaintiff also complied with the Defendants' requests by providing copies of all scheduled appointments as soon as she would received them. She would also provide the Defendant, Ms. Wascoat, with medical appointment confirmations, which usually also included more than one of the scheduled future medical appointments.

58.    In June 2001, the Plaintiff, Ivys J. Maldonado, was still seeking approval of the Intermittent Family Medical Leave which she had applied for on February 15, 2001.

59.    On or about July 9, 2001 the Plaintiff's dependant daughter, Ivelisse Mendoza, was hospitalized for five days because of severe pneumonia. The Plaintiff stayed with her daughter during her hospitalization.

60.    The Plaintiff timely contacted the Defendants, Ms. Wascoat and Ms. Ryan, to notify them of her daughter's hospitalization and her need to be with her.

61.    Upon the Plaintiff's return to work on July 16, 2001 she asked and the Defendant, Ms. Michaud, signed her time sheet for the previous week which noted that zero hours had been worked because of her daughter's hospitalization. Neither of the Defendants, Ms. Michaud, Ms. Ryan, and/or Ms. Wascoat, made any objections at the time regarding the time that the Plaintiff had taken during her daughter's illness.

62.    On or about July, 16 2001 the Defendant, Ms. Michaud, reprimanded the Plaintiff, Ivys J. Maldonado, for being in the office early. The Defendant told the Plaintiff that even when she arrived early she would have to wait outside and not enter the building prior to 8:00 a.m. even though this was not the policy as to other employees.

63.    On or about July 16, 2001 the Defendant, Ms. Michaud, also told the Plaintiff that "the clock started ticking from the time that the she entered the building", but she also informed the Plaintiff that she had to be at her work area by 8:00 a.m. The Defendant also instructed the Plaintiff not to turn on her computer before 8:00 a.m., nor check her voicemail before that time.

64.    The pattern of discriminatory and conflicting instructions caused the Plaintiff a great deal of confusion and anxiety.

65.    On or about July 16, 2001 the Plaintiff, Ivys J. Maldonado, informed the Defendant, Ms. Ryan about Ms. Michaud's new policy and Ms. Ryan assured the Plaintiff that she would speak to Ms. Michaud regarding her new requests to the Plaintiff.

66.    Notwithstanding, the Defendant Ms. Michaud, would come by the Plaintiff's work area to be sure that the Plaintiff was at her work area at exactly 8:00 a.m.

67.    The Performance review that had been tentatively scheduled by the Defendants for July 2001 was postponed until August 10, 2001.

68.    In August 2001 the Defendant, Ms. Ryan, finally provided the Plaintiff with FMLA forms to be completed by her daughter's physician.

69.    The first forms that Ms. Ryan provided were incorrect as they were for employees with personal illnesses, not for employees with ill dependants.

70. The Plaintiff contacted the Defendant Ms. Ryan and requested new forms, but Ms. Ryan informed the Plaintiff that the forms had to be revised. The new forms were not provided until the end of August 2001. A copy of the both forms are annexed herewith and incorporated by reference and marked Exhibit "H".

71. The Defendant, Brooktrout Technologies, held routine corporate meetings during which, the Defendant, Eric Giler, would provide all of the employees with an update on the company's sales, give out awards, recognize employees for their years of service, etc. And at least once a quarter the Defendant, Brooktrout, would provide lunch for all of it's employees.

72. On several occasions, and in particular on August 9, 2001, the Defendants, Ms. Wascoat and Ms. Michaud, told the Plaintiff to leave at 4:00 p.m. instead of at her regularly scheduled hour. The Defendant, Ms. Michaud, stated that "attending the corporate meeting would be considered as work time", even though the Plaintiff informed the Defendants that her tasks for that work day had not been completed.

73. However, on August 10, 2001, the Defendant, Ms. Michaud, verbally reprimanded the Plaintiff for not completing her tasks for the previous day although she and Ms. Wascoat had specifically instructed her to leave early the previous day.

74. On August 10, 2001 a second Performance Review was held with the Defendants, Ms. Ryan, Ms. Wascoat, and Ms. Michaud, attending the meeting with the Plaintiff.

75. The Plaintiff, Ms. Maldonado, at this time received a written warning and was informed that the five days that she had taken in July to attend to her daughter's necessary hospitalization were unexcused absences. A copy of the written warning is annexed herewith and incorporated by reference and marked Exhibit "I".

76. As a result of the August 10, 2001 Performance Review, a third review was to be held on October 12, 2001. The Plaintiff was also informed that if her absenteeism continued, the Defendant, Brooktrout, would consider the termination of the Plaintiff.

77. On August 12, 2001 the Plaintiff, sent a letter to the Defendants, Eric Giler, Robert Leahy, Christine Ryan, Valerie Wascoat, and Michele Michaud, asking for the Defendant, Brooktrout to respect her rights as a parent and reflected on the parental values of her culture, also noting therein the fact that other employees within her Department were being treated differently, with leniency, and were allowed to work reduced work schedules to suit the needs of their parental responsibilities. The Plaintiff also related Brooktrout's unfair and discriminatory treatment towards her. A

copy of the letter is annexed herewith and incorporated by reference and marked Exhibit "J".

78. On August 14, 2001 the Plaintiff met with the Defendant, Ms. Ryan regarding the status of her Intermittent Family Medical Leave, who told the Plaintiff to complete a vacation request form and to write FMLA on the form, also instructing the Plaintiff to back date the form to June 1, 2001.

79. At time of this meeting this Plaintiff had already obtained a letter confirming her daughter's medical conditions, diagnostic dates, and medical treatment from her daughter's attending physician, Dr. Muriello. The Defendant, Ms. Ryan, told the Plaintiff to attach a copy of the letter to the vacation request form and then instructed the Plaintiff to obtain the signature of Ms. Michaud.

80. The Plaintiff, as instructed, took the vacation form to the Defendant, Ms. Michaud, who immediately became agitated and upset toward the Plaintiff for requesting her signature thereon. The Defendant, Ms. Michaud, told the Plaintiff that even though she had completed the form it did not mean that she was approved for FMLA and she refused to sign the form at that time.

81. The Plaintiff, Ms. Maldonado, then returned to the Defendant, Ms. Ryan's office and informed her that Ms. Michaud had refused to sign the form. The Defendant, Ms. Ryan, stated that after Ms. Maldonado had left the office she had second thoughts that having the Plaintiff obtain Ms. Michaud's signature would most likely pose a problem, for she reassured the Plaintiff that she would handle the matter from thereon.

82. On August 17, 2001 the Plaintiff informed the Defendants, Ms. Wascoat, Ms. Michaud, and Ms. Ryan, via email, that her daughter, Ivonne-Marie Mendoza, was scheduled to have her annual EEE exam and that she would have to take her to Lahey Clinic during the morning hours. The Defendant, Ms. Michaud, became very agitated and upset with the Plaintiff and told the Plaintiff to reschedule the appointment for after 3:00 p.m.

83. The Plaintiff informed the Defendant, Ms. Michaud, that she would be unable to comply with this request since in order to effectively perform the exam, her daughter, Ivonne-Marie Mendoza, would have to be kept awake most of the previous night and that these exams are performed early in the morning, and, also, it would be nearly impossible for the Plaintiff to keep her daughter awake not only the night before, but also throughout the day of the exam until after 3:00 p.m.

84. The Plaintiff, Ivys Maldonado, contacted the Defendant, Ms. Ryan, and informed her about Ms. Michaud's unreasonable demand and how Ms. Michaud had become very upset with her.

85. The Defendant, Ms. Michaud, became even more upset and more vindictive toward the Plaintiff when she learned that she had spoken to Ms. Ryan about her demand.

86. On August 20, 2001 the Plaintiff's dependant daughter, Ismalis Mendoza, had an accident.

87. On August 23, 2001 the Plaintiff's daughter, Ismalis Mendoza, was to undergo emergency surgery. The Plaintiff went to work at her usual start time and spoke to the Defendant, Ms. Wascoat, about her daughter's medical condition and requested time off to attend to her at the hospital.

88. The Defendant, Ms. Wacoat, stated that she needed to consult with Ms. Michaud and later in the day wrongfully informed the Plaintiff that she would not be allowed to leave work because her daughter was over the age of 18 and did not qualify under the Family and Medical Leave Act, but informed the Plaintiff that she had 1.5 accrued vacation hours and could use them to leave early.

89. The Plaintiff's daughter was incapacitated for several months following the surgery and the Defendant, Brooktrout's, medical insurance provider certified her as the Plaintiff's disabled dependent child. A copy of the certification is annexed herewith and incorporated by reference and marked Exhibit "K". A copy of the time sheet noting the Plaintiff's 1.5 hours of vacation time to attend to her daughter is annexed herewith and incorporated by reference and marked "L".

90. On or about September 18, 2001 the Plaintiff received an email from the Defendant, Ms. Ryan, regarding the medical certifications that she had obtained from her daughter's physicians. The Defendant wanted the physicians to explain in their certifications what the Plaintiff's role as a parent was and why she needed to take time from work to attend to her daughter.

91. The Plaintiff replied to the Defendant, Ms. Ryan, regarding her request and also emailed the Defendant, Mr. Giler, to inform him of Ms. Ryan's request.

92. The Defendant, Ms. Ryan, replied to the Plaintiff's email stating that she had spoken to the Defendant, Mr. Giler, and that he was aware of the issues but in the future to direct all communications to Ms. Ryan. A copy of the emails are attached

herewith and incorporated by reference and marked Exhibit "M".

93. On or about September 26, 2001, all medical documentation from Lahey Clinic had been provided to the Defendant, Brooktrout, but the Defendant, Ms. Ryan, continued to wrongfully request additional information.

94. On October 4, 2001 the Plaintiff took her daughter, Ivonne-Marie Mendoza, to a scheduled medical appointment with Dr. Muriello, a Neurologist at Lahey Clinic.

95. When Dr. Muriello entered the examination room she informed the Plaintiff that she was very upset that the Defendant, Brooktrout, was continuing to request additional medical information. Dr. Muriello told the Plaintiff that she wanted to speak to the Defendant, Ms. Ryan, directly.

96. The Plaintiff called the Defendant, Ms. Ryan, from her personal cell phone and informed her that Dr. Muriello wanted to speak to her about her repeated requests regarding additional medical information.

97. The Defendant, Ms. Ryan, refused to speak to Dr. Muriello, but, nevertheless, the doctor took the cell phone from the Plaintiff and specifically told the Defendant, Ms. Ryan, that she had already written a letter documenting the Plaintiff's daughter's, Ivonne-Marie Mendoza, medical condition and she had completed the FMLA forms and she had faxed them twice to the Defendant, Brooktrout. She also met the Defendant, Ms. Ryan, that she was making her waste her and her secretary's time with all the excessive and ridiculous amounts of paperwork that these demands and changing requests had generated. Dr. Muriello also reiterated that from her own knowledge of and experience with the Family and Medical Leave Act she had more than complied with what was required for FMLA.

98. On October 16, 2001, the Plaintiff received an email from Beth Mog, Benefits Manager, advising her that she had sent Plaintiff information regarding her FMLA request via interoffice correspondence. A copy of the correspondence is annexed herewith and incorporated by reference and marked Exhibit "N"

99. Three days (3) later, on or about October 19, 2001, the Plaintiff finally received an Intermittent Family Medical Leave approval letter stating that she had been approved for Intermittent Leave, but it was only for a six-month period instead of the FMLA required one year period and the approval began on June 1, 2001 and would shortly expire in December of 2001.

100. This period of the FMLA approval for only six months meant that the Plaintiff,

-13-

within a short period of time would have to again start the entire process of obtaining medical documentation and re-submitting new FMLA forms for another approval. A copy of the letter is annexed herewith and incorporated by reference as Exhibit "O".

101. The Plaintiff immediately contacted the Defendant, Ms. Ryan, and brought to her attention that the Intermittent Family Medical Leave approval letter was for an incorrect six-month period instead of the one year (1) period required by law.

102. The Defendant, Ms. Ryan, as usual, insincerely told the Plaintiff that she would look into the matter.

103. Even though the Plaintiff had been approved by the Defendant, Brooktrout, for the six months of Intermittent Leave, the Defendant, Ms. Wascoat, still insisted that the Plaintiff make up any hours used for any Intermittent Leave purposes and to also provide medical documentation for every appointment and/or emergency.

104. On or about November 8, 2001 the Defendant, Ms. Wascoat, informed the Plaintiff that, in addition to the Plaintiff having to make up the hours taken for FMLA purposes, she would be creating a new form that was similar to the vacation request form and which was to be completed by the Plaintiff for all FMLA hours taken with, the Plaintiff also having to obtain a doctor's note each time and attach it to the new form.

105. The Plaintiff once again contacted the Defendant, Ms. Ryan, and informed her of Ms. Wascoat's new requirement, who in return told the Plaintiff that she was not required to submit any additional medical forms. She assured the Plaintiff that she would speak directly to Ms. Wascoat regarding the new policy and form, but if she did it did not have any effect and/or change of Ms. Wascoat's actions and conduct toward the Plaintiff.

106. On or about November 9, 2001 the Plaintiff met with the Defendant, Ms. Wascoat, to review this new required FMLA procedure and the form that she was going to create.

107. At this time the Plaintiff informed the Defendant, Ms. Wascoat, that her repeated requests for the Plaintiff to make up FMLA hours and to provide doctor's notes for each medical appointment and/or emergencies continued to violate her rights under the FMLA and other laws.

108. The Defendant, Ms. Wascoat, informed the Plaintiff that she was completely unaware of the Plaintiff's approved Intermittent Family Medical Leave status,